**DENCO DEVELOPMENT CO., a corporation, an Alleged Bankrupt, Appellant,**

v.

**COMMUNITY SAVINGS & LOAN ASSN., Appellee.**

**No. 21021.**

United States Court of Appeals
Ninth Circuit.

April 17, 1967.

Rehearing Denied June 1, 1967.

James C. Webb, Webb & Webb, Long Beach, Cal., for appellant.

John Endicott, Gibson, Dunn & Crutcher, Los Angeles, Cal., for appellee.

Before JONES, Senior Judge, United States Court of Claims*, and BARNES and JERTBERG, Circuit Judges.

MARVIN JONES, Senior Judge.

Denco Development Co. (Denco), an alleged bankrupt, appeals the judgment of the United States District Court for the Central District of California. The judgment reversed an order of the Referee in Bankruptcy awarding to Denco the balance of certain funds in the hands of the Receiver, and instead awarded the funds to appellee Community Savings and Loan Association (Community).

The facts found by the district court are, in summary, as follows:

Denco borrowed money from Community to build apartment houses on 29 tracts of real estate and secured the loan with deeds of trust making Community beneficiary. The buildings were constructed, and Denco subsequently defaulted on the loan. Community elected to foreclose and sell the property, pursuant to a remedy provided in the deeds of trust. On the day before the scheduled sales, however, an involuntary petition in bankruptcy was filed against Denco. The Referee in Bankruptcy issued a temporary order restraining the sales and placing the real estate under the control of a receiver.

Community then applied to the Referee for an order directing the Receiver to sequester the rents arising from the property and to hold them for Community's benefit; the deeds of trust provided for the collection of rents as an alternative remedy. Before the hearing on the application the parties agreed that the decisions of the Referee would, in addition, cover deeds of trust on 72 other pieces of property of Denco, a total of 101. Community, which was beneficiary under these deeds also, stipulated that an additional order restraining the sale of the 72 pieces of property would not be necessary.

* Sitting by designation of the Chief Justice.

At the hearing on the application for sequestration the Receiver assured the Referee in the presence of the parties that the money from the 101 pieces of property generated by the rents therefrom would be used only for Receiver's costs and for operation of the property, and that the balance would be held for Community's benefit and not made part of the alleged bankrupt's assets subject to the claims of general creditors. The assurance was acceptable to Community, and no formal order on sequestration was made.

Subsequently, Denco, Community, and the Receiver stipulated in writing, in part:

> Community * * * by way of compromise * * * stipulates and agrees to forego, waive and relinquish all rights * * * to recover any such deficiency sum that might occur or remain by reason of said foreclosure * * * should above Honorable Court * * * allow and permit Community to proceed with its foreclosure. [Record, p. 114.]

On the same day, pursuant to the stipulation, the Referee and the Honorable Albert Lee Stephens, Jr., District Judge, dissolved the order restraining the foreclosure sales on the 101 pieces of property. Record, pp. 50, 51.

The foreclosure sales were held. At the time of the sales Community was attempting to recover two amounts it alleged were owed to it. The first consisted of the principal due on the loan to Denco, the interest on the principal, and trustee's fees related to the sales. This amount was covered by the deeds of trust and was satisfied when, at the foreclosure sale, Community purchased the properties for an amount equal to the principal, interest, and fees. The second, also covered by the deeds of trust, consisted of other fees paid by Community: to its appraisers for information used by Community in its effort to have the order restraining the sales dissolved; to its attorneys in the same regard and in regard to the attempt to secure sequestration of rents, profits, and

issues; and a default charge on the unpaid balance. The three items in the second amount totalled $19,100, which exceeds the sum held by the Receiver after payment of his fees and expenses.

Following the sales, the Receiver, Denco, Community, and the Intervenors stipulated in open court that an order might be entered dismissing the involuntary petition in bankruptcy.

The issue in this case is whether, as the district court held, Community is entitled to the balance of the funds in the hands of the Receiver by virtue of its claims to the second amount discussed above; or whether, as the Referee in Bankruptcy held, the funds should be awarded to Denco, the alleged bankrupt.

Denco argues on appeal that the appointment of a Receiver did not effect transfer of title to the property, but rather that title remains in the alleged bankrupt until the disposition of the property was determined by the bankruptcy court. Imperial Assur. Co. v. Livingston, et al., 49 F.2d 745, 749, 74 A.L.R. 1336 (8th Cir. 1931). Denco maintains that since it retained title it should receive the rental income collected during that period. Community admits that normally a mortgagee is not entitled to rents from mortgaged property unless it is in possession, but points out that here it would have been in possession but for the temporary restraining order. Community argues that it did what it could under the circumstances by securing the Receiver's assurance that any rents collected would be held for Community's benefit. In support appellee cites Mortgage Loan Co. v. Livingstone, 45 F.2d 28 (8th Cir. 1930), cert. denied, 290 U.S. 685, 54 S.Ct. 121, 78 L.Ed. 590 (1933).

In *Mortgage Loan,* supra, the trustee under a second mortgage was estopped by a petition in bankruptcy and a restraining order of the bankruptcy court from foreclosing on the secured property, a hotel. However, the mortgagee received the assurance of the Receiver that rents from the property would be kept in a separate accounting; as here, no for-

mal order of sequestration was made. The restraining order was eventually lifted, and at the foreclosure sale a deficit resulted. The mortgagee thereupon demanded the rental funds held by the Receiver. On appeal, the circuit court stated:

It is argued, and the lower court was of the view, that they were not entitled to these funds because they had never acquired actual possession of the property * * *. The mortgagee from time to time asked the court for permission to foreclose, which carried with it a request for possession, and asked the court to direct the receiver to apply these rents and profits, insurance, and interest * * *. They [the mortgagees] were, of course, unable to take possession of the property from the receiver except on an order of court, and the record in this case warrants the conclusion that the receiver was acting not only on behalf of the general creditors, in so far as this property was concerned, but was also acting in behalf of these mortgagees * * *. By carrying on the business of this hotel company through a receivership, the court assumed the burden of administering the property and collecting the income therefrom for the benefit of whomsoever was entited thereto. This is not a case where the mortgagor was permitted to remain in possession of the property and to receive and disburse the earnings, but is a case where a receiver was appointed, who at the demand of the mortgagees, collected, impounded, and separately kept these funds. He was their receiver * * *. [Id. at 32.]

The funds were awarded to the mortgagee by the circuit court.

■ We are in accord with the reasoning of the appellate court in the *Mortgage Loan* case. Here, Community would have been in possession but for the restraining order. The parties understood that the Receiver was collecting the rents for Community's benefit. As was said in *Mortgage Loan*, "he was

their receiver." The fact that Community was not physically in possession is not sufficient to defeat its claim. We agree with the district court's conclusion that "Petitioner [Community] was in constructive possession of the property secured by the trust deeds." Record, p. 119.

■ But before we reach a result similar to that in *Mortgage Loan*, it is necessary to note the principal distinction. In the case before us Community executed a stipulation which waived the right to recover any deficiency resulting from the foreclosure sales. Denco argues that the claims in issue here are within the scope of that stipulation and that the stipulation, and the dissolution of the restraining order which resulted from it, was in effect a compromise arrived at by the sound discretion of the Referee, which should not be disturbed. In the Matter of S. F. Brothers, 151 F. Supp. 153, 157 (E.D.Mich.1956), aff'd per curiam, 244 F.2d 73 (6th Cir. 1957). This stipulation is indeed significant if it encompasses the funds the Receiver holds, since Community's voluntary participation in the stipulation would act as a bar to the recovery of any deficiency. In re Sherman Plastering Corp., 340 F. 2d 915, 919 (2d Cir. 1965).

■ When the Receiver, Denco, and Community entered into the stipulation, the Receiver had already assured Community that the rental funds would be held for Community's benefit. It was on the basis of this assurance that Community was willing to forego a formal order for sequestration of rents. Record, p. 113. To uphold Denco's position it would be necessary to interpret the stipulation as a waiver by Community of rights granted by the Receiver's assurance. We find nothing to support this view. The stipulation speaks of deficiencies which occurred or remained by reason of the foreclosure. As we have already noted, the right to collect rents was a separate remedy under the deeds of trust; because of the initiation of the bankruptcy proceedings the Receiver was collecting the rents and holding them for

Community's benefit. It is to the assurance by the Receiver which Community looks, not to Community's right under the deeds of trust to foreclose. We agree with the district court's finding that:

Petitioner is not seeking to recover any deficiency under the deeds of trust by its efforts to obtain the funds in the hands of the Receiver, but is on the contrary, attempting to obtain funds which were held for its benefit by the Receiver at all times during the course of this proceeding, pursuant to the application for sequestration of rents filed by petitioner and the representation and stipulation made by the Receiver that he was holding such funds for the benefit of petitioner after the payment of the Receiver's fees. [Record, p. 118.]

We accordingly agree with the district court's conclusion of law that:

Petitioner is not estopped by entering into the Stipulation * * * from asserting its rights to the balance of funds in the hands of the Receiver nor did it waive its rights to make such claim either by entering into such Stipulation or otherwise. [Record, p. 118.]

■ It is also apparent from the record that since the deeds of trust covered the three items totalling $19,100, discussed above, which were paid by Community, and since the amount bid, after payment of the principal, interest, and interest due, and the Trustee's fees pertaining to the sales, were not sufficient to pay the $19,100 items, there was in fact no deficiency, as we understand that term to have been used in the stipulation. In other words, the sums which were bid, plus the rents, were not sufficient to cover all the items included specifically in the deeds of trust.

So under either approach, the conclusion of the district court is correct.

■ On the basis of the foregoing, we hold that the funds in the hands of the Receiver derived from the rents from the 101 pieces of real estate were at all times during the course of these proceedings the property of Community, subject only to the Receiver's costs and operation of the real estate. Mortgage Loan Co. v. Livingstone, supra, 45 F.2d at 34. The funds were not part of the bankrupt's estate; therefore the district court was correct in disallowing the awards to Arnold S. Malter and James C. Webb.

The order of the district court is affirmed.